UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
NEW ALBANY DIVISION

PAUL W. WOOD, JR., )
)
   Plaintiff, )
)
   v. ) Case No. 4:10-cv-77-TWP-DML
)
MICHAEL J. ASTRUE, )
Commissioner of Social Security Administration, )
)
   Defendant. )

## ENTRY ON JUDICIAL REVIEW

Plaintiff, Paul Wood ("Wood"), requests judicial review of the decision of Defendant, Michael J. Astrue, Commissioner of the Social Security Administration ("the Commissioner"), denying Wood's application of Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under the Social Security Act, 42 U.S.C. § 301, *et seq*. For the reasons set forth below, the Commissioner's decision is **AFFIRMED**.

## I. BACKGROUND

### A. Procedural History

Wood applied for DIB on March 29, 2006, alleging disability on that date. A hearing was held via teleconference on May 4, 2009. On June 29, 2009, Administrative Law Judge Michael Nichols ("ALJ") found that Wood was not disabled at any time from the alleged onset date through the date of the decision. On May 28, 2010, the Appeals Council denied Wood's request for review, thus making the ALJ's decision final. 20 C.F.R. § 404.981.

B.  **Factual Background**

Wood was 43 years old on his alleged onset date. Tr. at 21. According to his testimony, Wood had a sixth-grade education and could read a "little bit," but could hardly write. Tr. at 28-29. His past relevant work experience was as a truck driver with medium exertion requirements. Tr. at 45. Wood's medical records are fairly extensive. For the sake of economy, the Court will only include the facts most relevant to Wood's arguments on appeal.

In 2002, Wood injured his shoulder and had a left superior labral tear surgically repaired. Tr. at 15. On October 5, 2005, Dr. Grossfield ("Grossfield") performed a surgical revision because one area of repair had not completely healed. Tr. at 254. Eight weeks later, Wood was doing well and continuing physical therapy. Tr. at 254, 260-263.

On December 15, 2005, Wood visited King's Daughter's Medical Group ("King's Hospital") and complained of left shoulder pain, swelling in his left neck and shoulder, and depression. Tr. at 185. He was prescribed Depo Medrol (anti-inflammatory) and Wellbutrin (anti-depressant), and referred back to Grossfield for pain management. Tr. at 186. Later that month, Wood rated his pain level as two to five on a 10-point scale and Grossfield recommended another four weeks of physical therapy. Tr. at 253.

On January 31, 2006, Wood saw Grossfield because he was concerned about being told he had reached a strength plateau. Tr. at 252. Grossfield noted that Wood's physical therapy evaluation showed he had adequate strength and that his symptoms suggested the possibility of magnification. Tr. at 252. On February 24, 2006, physical therapist Craig Smith ("Smith") performed a functional capacity evaluation on Wood. Tr. at 154-164. Smith noted that Wood was able to lift 20 pounds occasionally and 10 pounds frequently. Tr. at 162. He opined Wood should keep his left elbow within 12 inches of his torso to minimize the leverage force on his left

2

shoulder and work at bench or counter heights of approximately three feet above floor level. Tr. at 162. Smith also opined Wood should avoid operating heavy equipment, and he should never perform overhead work, operate repetitive hand controls with his left arm, climb ladders, work around heights, or drive manual transmission vehicles. Tr. at 162.

On April 24, 2006, a physician's assistant at Baptist Worx (the "PA") indicated Wood could return to work with the restrictions spelled out in the functional capacity evaluation completed by Smith in February 2006. Tr. at 173. In July 2006, Wood saw the PA and complained of continued problems with his left shoulder and new pains in his right shoulder due to overuse. Tr. at 166. The PA diagnosed him with exacerbation of left shoulder pain and stated he could immediately return to work with the following restrictions: no repetitive use of his right arm for more than 30 minutes per hour, no use of his left arm, and no driving a manual transmission vehicle. Tr. at 152.

On August 7, 2006, Wood entered King's Hospital with sinus congestion and complaints of weakness and exhaustion with minimal exertion. Tr. at 192. He also complained of shortness of breath, but no specific chest pain. Tr. at 192. Subsequently, he was diagnosed with cardiomyopathy, hypothyroidism, type II diabetes, depression, and hypertension. Tr. at 193. On August 18, 2006, it was noted during another visit to King's Hospital that Wood had not filled the prescription for his hypothyroid medicine. Tr. at 362. Wood was then informed that his cardiomyopathy would not improve if he did not take his medications. Tr. at 362. On September 14, 2006, a report from King's Hospital showed Wood was consistently taking his medications and his diabetes was stable and doing well. Tr. at 360-361.

On October 28, 2006, consulting physician Dr. Monte Martin ("Martin") examined Wood. Tr. at 342-345. Martin noted Wood had a twenty-pound lifting restriction due to left

3

shoulder atrophy. Tr. at 342. At the visit, Wood complained of numbness in his fourth and fifth fingers on his left hand; a history of poorly controlled diabetes, for which he took Lantus; worsening disease in his shoulders from driving, loading, and unloading trucks; a history of neuropathy and bad hemoglobin readings; and a history of hypothyroid-induced cardiomyopathy. Tr. at 342. Martin noted that Wood's records showed no evidence of dilated or congestive cardiomyopathy, and he was not taking any medicine for congestive heart failure. Tr. at 343.

Martin also noted that Wood had very poorly controlled diabetes and needed help to get his sugar levels under control. Tr. at 345. He stated that if he did not get his sugar levels under control he would soon experience tertiary symptoms of his diabetes such as coronary artery disease, as well as peripheral and diabetic nephropathy. Tr. at 345. However, he did note that those symptoms were not present at that time, and there was also no evidence of congestive heart failure.

On November 8, 2006, Wood went to King's Hospital for a diabetes checkup and reported his blood sugar levels would increase in the evening hours. Tr. at 356. His Lantus medication was increased, and he was told to adhere to his diet. Tr. at 357. It was also noted by Nurse Conners that he had missed his last two appointments with the diabetes educator. Tr. at 357.

On January 9, 2007, Dr. Napier ("Napier") completed a one-page medical condition form in order for Wood to become eligible for food stamps. Tr. at 369. On the form Napier opined that Wood could lift fewer than 10 pounds, push or pull fewer than 20 pounds, had a weak grip, and checked a box indicating that Wood was totally unable to work. Tr. Napier also gave Wood's left shoulder labral tear a poor prognosis, but gave his diabetes, hypertension, and hypothyroidism a good prognosis. Tr. at 369.

4

From February 21, 2008 through March 4, 2009, Wood saw Dr. Alnefai eight times for follow-ups regarding his diabetes. Tr. 402-409. Wood complained of swelling, stinging, and coldness in his feet. Tr. at 402. During this time period, Wood reported not taking his Levothyroxine medication. Tr. at 407. Dr. Alnefai asked Wood to send in his blood sugar readings weekly and encouraged him to take his medication daily. Tr. at 407.

On July 9, 2008, Dr. Xenopoulous performed a left heart catheterization, a coronary angiography, and a left ventriculopathy. Tr. at 432. The results showed a 10% ostial left main coronary, no obstructive coronary artery disease, mild hypokinesis, and normal left ventricular hemodynamics. Wood's left main coronary artery and left anterior descending coronary artery were both free from significant disease. Tr. at 432. During two follow up appointments, Dr. Xenopoulous observed Wood to have a 10% ostial left main with no significant disease. He also noted Wood's left ventricular systolic function was mildly depressed with an ejection fraction of 45%. Tr. at 434. Additionally, Dr. Xenopoulous noted Wood complained of infrequent chest pain, had poor exercise tolerance, and continued to smoke a pack of cigarettes a day. Tr. at 435, 437.

In April 2009, Wood went to the emergency room with a chief complaint of chest pains. Tr. at 410. He was diagnosed with non cardiac chest wall pain. Tr. at 411. Subsequently he was treated with oxygen and then released the same day. Tr. at 418.

## C. **The Administrative Hearing**

### 1. **Vocational Expert Testimony**

The administrative hearing took place on May 4, 2009. During the hearing, the ALJ asked the Vocational Expert, Stephanie Barnes ("VE") if there would be job opportunities for a hypothetical person with the following characteristics: the person has the same age, education,

and past work history as Wood; the person could perform light work; the person could lift no more than 10 pounds occasionally with the non-dominant left hand and up to 20 pounds frequently with the dominant right hand; the person could use the left hand occasionally but not repetitively; the person could never use the left arm above shoulder level, but could use it frequently to assist the right arm; the person had 20/20 vision in one eye and 20/200 vision in the other eye; and the person had the option to sit briefly at his workstation for a few minutes every 30 to 45 minutes. Tr. at 47-53. The VE testified that the hypothetical individual could perform the light jobs of food product sorter and small products sorter, both of which had a substantial number of positions in Indiana. Tr. at 53-54.

## II. DISABILITY AND STANDARD OF REVIEW

To be eligible for disability benefits, a claimant must prove that he is unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. § 423(d)(1).

An ALJ uses a five step sequential evaluation process to determine if a person is disabled. Specifically, 20 C.F.R. § 404.1520 provides as follows:

1. If the claimant is employed in substantial gainful activity, the claimant is not disabled.

2. If the claimant does not have a severe medically determinable physical or mental impairment or combination of impairments that meets the duration requirement, the claimant is not disabled.

3. If the claimant has an impairment that meets or is equal to an impairment listed in the appendix to this section and satisfies the duration requirement, the claimant is disabled.

4. If the claimant can still perform the claimant's past relevant work given the claimant's residual functional capacity, the claimant is not disabled.

> 5. If the claimant can perform other work given the claimant's residual functional capacity, age, education, and experience, the claimant is not disabled.

The burden of proof is on the claimant at the first four steps; it then shifts to the Commissioner at the fifth step. *Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 352 (7th Cir. 2005) (citation omitted).

The Social Security Act, specifically 42 U.S.C. § 405(g), provides for judicial review of the Commissioner's denial of benefits. When the Appeals Council denies review of the ALJ's findings, the ALJ's findings become the findings of the Commissioner. *Hendersen v. Apfel*, 179 F.3d 507, 512 (7th Cir. 1999). A court will sustain the ALJ's findings if they are supported by substantial evidence. 42 U.S.C. § 405(g); *Nelson v. Apfel*, 131 F.3d 1228, 1234 (7th Cir. 1999) (citations omitted).

In reviewing the ALJ's findings, the Court may not decide the facts anew, reweigh the evidence, or substitute its judgment for that of the ALJ. *Nelson*, 131 F.3d at 1234. While a scintilla of evidence is insufficient to support the ALJ's findings, the only evidence required is "such evidence as a reasonable mind might accept as adequate to support a conclusion." *Diaz v. Chater*, 55 F.3d 300, 305 (7th Cir. 1995) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). Further, the ALJ "need not evaluate in writing every piece of testimony and evidence submitted." *Carlson v. Shalala*, 999 F.2d 180, 181 (7th Cir. 1993) (citations omitted). However, when the ALJ makes a decision he "must confront evidence that does not support his conclusion and explain why it was rejected." *Kasarsky v. Barnhart*, 335 F.3d 539, 543 (7th Cir. 2003) (citation omitted). The ALJ must also sufficiently explain his assessment of the evidence in order to allow the reviewing court to trace the path of reasoning. *See Rohan v. Chater*, 98 F.3d 966, 971 (7th Cir. 1996) (citations and internal quotations omitted). If adequate discussion of the

issues is not given, the decision will be remanded. *See Brisco*, 425 F.3d at 351 (citation and internal quotations omitted); *see also Zurawski v. Halter*, 245 F.3d 881, 888-89 (7th Cir. 2001).

### III. DISCUSSION

#### A. The ALJ's Findings

After considering all the evidence, including the testimony at the hearing, the ALJ determined that based on the application for disability and DIB filed on March 29, 2006, Wood was not disabled under sections 216(i) and 223(d) of the Social Security Act. The ALJ also determined that based on the application for SSI, Wood was not disabled under section 1614(a)(3)(A) of the Social Security Act. In making his ruling, the ALJ made the following findings:

1. The Claimant meets the insured status requirements of the Social Security Act through December 31, 2011.

2. The Claimant has not engaged in substantial gainful activity since March 29, 2006, the alleged onset date (20 CFR § 404.1571 *et seq.*, and § 416.971 *et seq.*).

3. The Claimant has the following severe impairments: history of a left shoulder rotator cuff tear with status post two surgical repairs, diabetes mellitus, complaints of chest pain, and blindness in the right eye (20 CFR §§ 404.1520(c) and 416.920(c))

4. The Claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR §§ 404.1525, 404.1526, 416.925 and 416.926).

5. The Claimant has the residual functional capacity ("RFC") to perform light work as defined in 20 CFR §§ 404.1567(b) and 416.967(b), except lifting no more than 10 pounds occasionally with the non dominant left arm/hand and up to 20 pounds frequently with the dominant right arm/hand; he can use the non-dominant left hand occasionally, but not repetitively; he cannot use the left arm above shoulder level; he can use the left arm prudently as an assist to the dominant right; he must be afforded the opportunity to briefly sit every 30 to 45 minutes; he has uncorrected vision of 20/200 in the right eye; and 20/20 in the left eye.

6. The Claimant is unable to perform any past relevant work (20 CFR §§ 404.1565 and 416.965).

8

7. The Claimant was born on November 9, 1962 and was 43 year old, which is defined as a younger individual age 18-49, on the alleged disability onset date. (20 CFR §§ 404.1563 and 416.963).

8. The Claimant has a marginal education and is able to communicate in English (20 CFR §§ 404.1564 and 416.964).

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the Claimant is not disabled, whether or not the Claimant has transferable job skills (20 CFR Part 404, Subpart P, Appendix 2).

10. Considering the Claimant's age, education, work experience and RFC, there are jobs that exist in significant numbers in the national economy that the Claimant can perform (20 CFR §§ 404.1569, 404.1569a, 416.969, and 416.969a).

**B.** <u>**Analysis**</u>

Wood contends that the ALJ erred in two ways: 1) the ALJ erred in his step two analysis; and 2) the ALJ did not reasonably weigh all the significant medical evidence.

**1.** **ALJ's Step Two Analysis**

Wood claims the ALJ erred at step two of the five-step sequential evaluation by failing to consider his cardiomyopathy as a severe impairment, and because he ignored the cardiac catheterization report that diagnosed him with mitral vascular disease. Wood argues that both of these impairments should have been considered severe impairments in the ALJ's step two analysis.

A claimant satisfies step two of the Commissioner's five-step sequential disability evaluation process if he has a severe medically determinable physical or mental impairment that meets the duration requirement, or a combination of impairments that are severe and meet the duration requirement. *See* 20 C.F.R. § 404.1521. When making his step two determination, the ALJ determined Wood had several severe impairments including Wood's left shoulder rotator cuff tear, diabetes mellitus, chest pain, and blindness in his right eye. Tr. at 18. After finding

Wood suffered from these severe impairments, the ALJ proceeded to the next step in the evaluation process. Tr. at 18. When the ALJ can consider all of a Claimant's impairments in the remaining steps of the disability determination, the ALJ's failure to find additional severe impairments at step two does not constitute reversible error. *See Maziarz v. Sec'y of Health & Human Serv.,* 837 F.2d 240, 244 (6th Cir. 1987) (ruling that ALJ's failure to label one of the Claimants impairments severe was not reversible error because he continued to the next step of the process, and because the ALJ could still consider the impairment when deciding if the Claimant had the RFC to perform substantial gainful activity).

Social Security Ruling 96-8p provides that the ALJ "must consider limitations and restrictions imposed by all of an individual's impairments, even those that are not severe." The record shows that in addition to the severe impairments discussed above, the ALJ also considered Wood's sleep apnea, and his neuropathy. Tr. at 20. He also considered the psychiatric review technique performed on September 27, 2006 by Jay Athy, Ph.D., which revealed no severe impairments, and the physical RFC assessment performed on November 7, 2006 by Disability Examiner Shannon Collett. Tr. In Collett's report, she specifically stated that Wood was in stable condition with a diagnosis of cardiomyopathy. Tr. at 348. As mentioned above, the ALJ "need not evaluate in writing every piece of testimony and evidence submitted." *Carlson,* 999 F.2d at 181 (citations omitted). The ALJ only needs to provide enough reasoning to allow the Court to build a logical bridge from the evidence to his conclusion. *See Green v. Apfel*, 204 F.3d 780, 781 (7th Cir. 2000). The ALJ's failure to find that Wood's cardiomyopathy, and/or his mitral vascular disease were severe impairments was

not reversible error.[1] Furthermore, the ALJ sufficiently explained his assessment of the evidence in enough detail to allow the Court to build a bridge from the evidence to his conclusion; consequently, this argument is rejected.

### 2. ALJ's Weight of the Medical Evidence

Wood's next argument is that the ALJ did not properly weigh all the necessary medical evidence. He argues the ALJ should have given great weight to the opinion of his treating physician, Dr. Napier. He also argues the ALJ based his decision on stale medical opinions that only referred to his shoulder injuries and did not address all of his disabilities.

In 2007, Wood's treating physician, Dr. Napier, filled out a form to enable Wood to receive food stamps. In doing so, Dr. Napier checked a box indicating that Wood was unable to work. Wood contends that the ALJ's failure to mention this form is tantamount to ignoring a medical opinion from a treating physician. Indeed, an ALJ is required to give a treating physician's opinion controlling weight, as long as the opinion is supported by medical findings and consistent with substantial evidence in the record. *See* 20 C.F.R. § 404.1527(d)(2). "Medical opinions are statements from physicians…that reflect judgments about the nature and severity of your impairment(s), including your symptoms, diagnosis and prognosis, what you can still do despite impairment(s), and your physical or mental restrictions." 20 C.F.R. § 404.1527(a)(2). The Commissioner gives more weight to a treating physician's opinion because it is more likely the physician can give a "longitudinal picture of your medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations…or brief hospitalizations." 20 C.F.R. § 404.1527(d)(2).

---

[1] It is worth noting that a diagnosis, without more evidence, is not necessarily a disability. *See Estok v. Apfel*, 152 F.3d 636, 640 (7th Cir. 1998) (holding that a diagnosis of fibromyalgia was not enough to prove a disability, and more evidence was needed).

However, the Court does not find the form Dr. Napier completed to be a *medical opinion* as defined by the regulations. The form was a one-page statement of medical condition for food stamp and temporary assistance eligibility. "The better an explanation a source provides for an opinion, the more weight [the ALJ] will give that opinion." 20 C.F.R. § 404.1527(d)(3). In addition, "the more a medical source presents relevant evidence to support an opinion, particularly medical signs and laboratory findings, the more weight [the ALJ] will give that opinion." *Id.* The form submitted by Napier contained no explanation for his opinion, no evidence to support his opinion, no laboratory findings, and no medical analysis. In short, Napier did not provide appropriate reasoning as to why Wood was unable to work. The form is also inconsistent with the substantial evidence of the record because there were no other medical opinions that indicated Wood was completely unable to work. Hence, this argument is rejected.

Wood next contends that the ALJ based his decision off stale medical opinions that did not capture all of his disabilities. He claims the Baptist Worx opinion was outdated because it was performed on February 24, 2006, which is before the alleged onset date of March 29, 2006. Wood also argues the ALJ did not consider his diagnosis of uncontrolled diabetes mellitus or the cardiac catheterization performed by Dr. Xenopoulos.

The Baptist Worx opinion does contain a report from February 24, 2006; however, the entire exhibit shows medical findings from examinations performed up until July 20, 2006, which is after the alleged onset date. Tr. at 152-180. Thus, the ALJ did not err when he relied on the Baptist Worx medical findings.

The ALJ also appropriately considered the evidence regarding Wood's uncontrolled diabetes mellitus. The ALJ specifically mentioned in his opinion that Wood reported he had uncontrolled diabetes for "quite some time." Tr. at 20. Additionally, the ALJ gave great weight

to Dr. Martin's opinion, which also identified that Wood had poorly controlled diabetes. Tr. at 345. The ALJ's discussion of Wood's diabetes in his decision and his adoption of Dr. Martin's medical opinion clearly indicate that he considered the evidence regarding Wood's diabetes impairment.

Finally, Wood argues the ALJ erred because he did not consider the cardiac catheterization performed by Dr. Xenopoulos on July 9, 2008. The ALJ did not specifically mention the catheterization procedure; however, he did discuss Wood's reports of chest pain and his cigarette abuse, both of which were documented in Dr. Xenopoulos' follow up reports after the catheterization procedure. Tr. at 435, 437. It is well settled that a written evaluation of each piece of evidence or testimony is not required. *Orlando v. Heckler,* 776 F.2d 209, 213 (7th Cir. 1985). The Court is persuaded that the ALJ appropriately considered the entire record regarding Wood's catheterization procedure, which included the surgery results and the follow up appointments. Furthermore, as mentioned above, the ALJ used several other medical reports in making Wood's disability determination. The ALJ must only explain his assessment of the evidence in enough detail to allow the reviewing court to trace the path of reasoning. *See Rohan*, 98 F.3d at 971 (citations and internal quotations omitted). The Court is able to clearly follow the ALJ's reasons for his findings in this regard. The ALJ's failure to specifically mention the cardiac catheterization procedure in his opinion was not reversible error.

## IV. CONCLUSION

For the reasons stated herein, the decision of the Commissioner of Social Security is **AFFIRMED**.

SO ORDERED.

DATE: 07/26/2011

_____
Hon. Tanya Walton Pratt, Judge
United States District Court
Southern District of Indiana

DISTRIBUTION:

William Edward Jenner
JENNER AUXIER & PATTISON LLP
wjenner@wjennerlaw.net, jdeaton@wjennerlaw.net, klynch@wjennerlaw.net, chuff@wjennerlaw.net

Thomas E. Kieper
UNITED STATES ATTORNEY'S OFFICE
tom.kieper@usdoj.gov, pearlie.wadlington@usdoj.gov, lin.montigney@usdoj.gov